## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **SUSAN M. ROSE-THOMAS**<br>5194 Camden Dr.<br>Stow, OH 44224<br><br>          Plaintiff,<br><br>   -vs-<br><br>**WESTERN RESERVE HOSPITAL,<br>LLC**<br>1900 23rd St.<br>Cuyahoga Falls, OH 44223<br><br>         Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND ENCLOSED<br>HEREON** |

Now comes Plaintiff, Susan M. Rose-Thomas, who by and through her undersigned counsel, and for her Complaint, alleges and avers as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343, as it is an action seeking redress under the laws and statutes of the United States of America for deprivations of rights secured by the Constitution and laws of the United States.

2. This Court has jurisdiction over the Plaintiff's claims arising under the Constitution and laws of the State of Ohio pursuant to 28 U.S.C. §1367(a), as such claims are part of the same case or controversy as those giving rise to the claims over which this Court has jurisdiction under 28 U.S.C. §§1331 and 1343.

3. Venue properly lies in this Court under 28 U.S.C. § 1391(b), as the Defendant resides within the Northern District of Ohio and all relevant events giving rise to the action occurred within the Northern District of Ohio.

## **PARTIES**

4.  Plaintiff, SUSAN M. ROSE-THOMAS, is an individual over the age of 18 years who, at all times relevant hereto, resided in the City of Stow, County of Summit, State of Ohio.

5.  Defendant, WESTERN RESERVE HOSPITAL (hereinafter "Hospital") is an Ohio corporation with its principal place of business in the City of Cuyahoga Falls, County of Summit, State of Ohio.

## **FACTUAL HISTORY**

6.  Plaintiff realleges and incorporates by reference the allegations made in Paragraphs 1 through 5 as set forth above.

7.  Ms. Rose-Thomas was hired by Defendant Hospital on or about July 15, 1985 as a Registered Nurse.

8.  Ms. Rose-Thomas was promoted to the position of Charge Nurse in the Same Day Surgery Department in September 2016.

9.  Ms. Rose-Thomas worked for Defendant Hospital continuously from her hire date until her termination.

10. During her thirty-four and one-half years (34 ½) years of employment with Defendant Hospital, Ms. Rose-Thomas had no significant work-related complaints, discipline, or performance issues.

11. Ms. Rose-Thomas's co-workers voiced to her that the Director of the Operating Room/Same Day Surgery/Endoscopy did not like her because she did not approve of their unethical decisions and unprofessional conduct that Ms. Rose-Thomas reported.

12. The Director of the Operating Room/Same Day Surgery/Endoscopy Department often tried to have Ms. Rose-Thomas removed from her budget and ultimately wanted to remove her from the department.

13. On or about November 25, 2019, Ms. Rose-Thomas was written up for being interruptive to patient care during a surgical case by repeatedly calling for unnecessary updates.

14. According to phone records at that time, Ms. Rose-Thomas called once for an update.

15. Ms. Rose-Thomas initially called the operating room nurse to report her arrival per protocol.

16. According to documented records, the operating room nurse called Ms. Rose-Thomas during the case.

17. On or about December 23, 2019, Ms. Rose-Thomas was written up for cell phone use and was demoted from the charge nurse position.

18. As a result of this demotion, Ms. Rose-Thomas lost the pay associated with the charge nurse position she had held.

19. Several young, male nurses, however, were not written up for cell phone usage in the workplace nor did they lose their charge nurse positions and the pay associated with the position.

20. The young, male nurses received sports updates, made numerous calls and texts to their wives and children, viewed artwork on their personal computers, and watched a potato chip eating contest on their cell phones during work hours.

21. The young, male nurses were often sought out and consulted on decisions that need to be made regarding how the department should run, despite Ms. Rose-Thomas and another female nurse overseeing the department.

22. Management would frequently share departmental changes and information with the young, male nurses rather than the female nurses in charge of the department.

23. On or about February 11, 2020, Ms. Rose-Thomas was diagnosed with Shingles. Her doctor stated it was likely due to the stress she endured at work.

24. On or about February 14, 2020, Ms. Rose-Thomas was falsely accused of making a statement about a patient's care.

25. Ms. Rose-Thomas was given supplies and a consent form from a charge nurse to do a blood draw on a patient for what the charge nurse thought it was for genetic testing.

26. Ms. Rose-Thomas told the patient that she needed to take blood for genetic testing.

27. The patient expressed concern because she had just had genetic testing done, and Ms. Rose-Thomas brought those concerns to the charge nurse.

28. Ms. Rose-Thomas asked the charge nurse to get the information of what the blood was being drawn for from the operating room nurse. In the meantime, the charge nurse asked her to admit another patient.

29. After Ms. Rose-Thomas finished the admission, she asked the charge nurse if the patient's blood still needed to be drawn. The charge nurse responded that the blood could be drawn in the operating room.

30. Later, Ms. Rose-Thomas's manager asked to see her. The manager told her that the patient's surgery was delayed five (5) minutes.

31. The manager wanted to know why Ms. Rose-Thomas told the charge nurse that the blood could be drawn in the operating room. Ms. Rose-Thomas immediately told her manager that this statement was untrue.

32. Ms. Rose-Thomas insisted that the charge nurse be brought into the meeting. The manager said it was unnecessary, but the charge nurse was brought in at Ms. Rose-Thomas's insistence because she was telling the truth about the situation

33. When the charge nurse joined the meeting, the manager asked the charge nurse why the blood was not drawn by Ms. Rose-Thomas in the preoperative area, the charge nurse said that Ms. Rose-Thomas stated it could be drawn in the operating room.

34. Ms. Rose-Thomas cursed and called the charge nurse a liar. The charge nurse became loud and denied that she and the operating room nurse agreed that the blood be drawn in the operating room.

35. The charge nurse raised her arms, went towards the door, and swung it open continuing to mumble about the situation.

36. Ms. Rose-Thomas continued to tell the manager that she was telling the truth. She then stood up, walked away from the manger, and put her hands on her head in disbelief pleading that she was telling the truth.

37. Ms. Rose-Thomas walked out of the room and immediately went to Defendant Hospital's Vice President of Patient Care Services/Chief Nursing Officer's office to the discuss the matter. Ms. Rose-Thomas and the Chief Nursing Officer discussed the situation at length via phone

38. On or about February 17, 2020, the Chief Nursing Officer stated that she needed to investigate the matter.

39. The Chief Nursing Officer's investigation found that the charge nurse had lied, and Ms. Rose-Thomas had told the truth about the patient's care.

40. On or about February 19, 2020, The Chief Nursing Officer hesitantly chose to terminate Ms. Rose-Thomas because she had cursed, and the other nurses felt unsafe, despite Ms. Rose-Thomas telling the truth about the situation and protecting her integrity.

41. Ms. Rose-Thomas was not terminated for her statement, but her reaction to the serious, false allegation. The reaction would not have occurred if the charge nurse had not made the false accusation that could have caused termination of employment.

## ADMINISTRATIVE PREREQUISITES

42. Plaintiff Rose-Thomas has complied with all the administrative prerequisites to action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 and the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., as amended, as follows:

   A. Following the events complained of herein, Plaintiff Rose-Thomas timely filed a formal charge of sex and age discrimination and retaliation against Defendant Hospital with the Equal Employment Opportunity Commission ("EEOC")

   B.  Plaintiff Rose-Thomas fully cooperated in the Agency's investigation.

   C.  Plaintiff Rose-Thomas received a Dismissal and Notice of Suit Rights from the EEOC on April 8, 2021, and she has exhausted the aforementioned statutes prior to filing this lawsuit. A copy of the EEOC Right to Sue Letter is attached hereto as Plaintiff's Exhibit 1

## FIRST CLAIM
## TITLE VII—SEX DISCRIMINATION

43. Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully rewritten herein.

44. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Plaintiff Rose-Thomas complains of Defendant Hospital's violation of Title VII's prohibition against discrimination in employment based in whole, or in part, upon an employee's sex.

45. As a result of Defendant Hospital's previously outlined discriminatory treatment and harassment of Plaintiff Rose-Thomas, and/or its acquiescence of such behavior, Plaintiff Rose-Thomas was unjustly and discriminatorily deprived of equal employment opportunities and subjected to a hostile work environment.

46. As a result of Defendant Hospital's above stated action, Plaintiff Rose-Thomas also suffered, and continues to suffer from increased physical and mental distress.

**SECOND CLAIM**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**29 U.S.C. § 623**

47. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

48. This claim is authorized and instituted pursuant to the provisions of the Age Discrimination in Employment Act 29 U.S.C. § 621 et seq., as amended, for relief based upon the unlawful employment practices of Defendant Hospital.

49. Plaintiff, Susan M. Rose-Thomas, was fifty-seven (57) years old at the time she was terminated from her position at Defendant Hospital.

50. At all times relevant to this action, Plaintiff Rose-Thomas was a fully qualified for her position as a charge nurse in the Same Day Surgery Department.

51. Defendant Hospital discriminated against Plaintiff Rose-Thomas based solely on her age by, among other ways: discipling her for violations, but other younger nurses were not, such as

overtime without approval, a younger nurse  being chosen to teach a joint camp with overtime pay over an older nurses who were told that they would not pay overtime, and younger nurses being groomed to replace Ms. Rose-Thomas and another nurse.

52. Upon information and belief, Defendant Hospital has hired younger nurses to fill positions similar to Ms. Rose-Thomas's.

53. As a result of Defendant Hospital's policies and practices, Plaintiff Rose-Thomas was unjustly and discriminatorily deprived of equal employment opportunities because of her age.

54. As a further result of Defendant Hospital's above stated actions, Plaintiff Rose-Thomas has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to her as an employee, but denied because of her age due to her termination, in an amount to be proven at trial.

## THIRD CLAIM
## RETALIATION FOR OPPOSING DISCRIMINATION

55. Plaintiff realleges and incorporates by reference the allegations made in the foregoing paragraphs as if fully rewritten herein.

56. Defendant Hospital's above-mentioned actions constituted retaliation against Plaintiff Rose-Thomas for having opposed an unlawful employment practice, in violation of Title VII at 42 U.S.C.A. § 2000e-3(a).

## PRAYER FOR RELIEF

57. WHEREFORE, Plaintiff, Susan M. Rose-Thomas, requests judgment and damages against Defendant, Western Reserve Hospital, LLC, as follows:

a. A declaratory judgment that Defendant Hospital has violated Plaintiff Rose-Thomas's right to be free from discrimination in the workplace pursuant to the Age Discrimination in Employment Act, §§ 29 U.S.C. § 621 et seq., as amended, and state law;

b. A declaratory judgment that Defendant Hospital has violated Plaintiff Rose-Thomas's right to be free from discrimination in the workplace on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and state law;

c. Enter an injunction ordering Defendant Hospital to make Plaintiff Rose-Thomas whole with full back pay, benefits, and front pay;

d. An award to Plaintiff Rose-Thomas for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential losses;

e. An award for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended;

f.  An award to Plaintiff Rose-Thomas of interest on any awards at the highest rate allowed by law;

g. An award of punitive damages for the malicious and discriminatory actions of Defendant Hospital; and

h. Such other and further relief as this Court deems just and appropriate.

Respectfully Submitted,


/s/ Robert A. Pecchio
Robert A. Pecchio (0025282)
**THE PECCHIO LAW FIRM**
2305 East Aurora Road, Ste. A-1
Twinsburg, Ohio 44087
330-963-6600 (p); 330-963-6650 (f)
rpecchio@pecchiolawfirm.com

*Attorney for Plaintiff*


## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiff hereby demands trial by jury for all claims herein plead.


Respectfully Submitted,


/s/ Robert A. Pecchio
Robert A. Pecchio (0025282)


*Attorney for Plaintiff*